Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2344 | DATE | 12/22/00 |
| CASE TITLE | Bliss Salon Day Spa v. Bliss World LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for preliminary injunction [15] is denied.

(11) X [For further detail see order on the reverse side of the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 2 number of notices |
| X | Notices mailed by judge's staff. | DEC 22 2000 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |

| MD | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 DEC 22 PM 1:20 Date/time received in central Clerk's Office | mailing deputy initials |
|---|---|---|---|

Document Number 36

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 22 2000

| | | |
|---|---|---|
| **BLISS SALON DAY SPA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BLISS WORLD LLC,**<br><br>**Defendant.** | ) | **No. 00 C 2344** |
| **BLISS WORLD LLC,**<br><br>**Counter-plaintiff,**<br><br>**v.**<br><br>**BLISS SALON DAY SPA, BLISS LTD., and ROBERT EISENBERG,**<br><br>**Counter-defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Bliss Salon Day Spa, plaintiff in the instant action, claims that defendant, Bliss World, LLC, provides and sells the same goods and services, namely, day spa and salon services and products, and is thereby engaging in unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), infringing its common law trademark, and violating Illinois' Consumer Fraud and Deceptive Practices Act, 815 ILCS §§ 505/1 *et seq*. Plaintiff now seeks a preliminary injunction requiring defendant to remove its goods and displays from any area within 100 miles from downtown Chicago, in addition to enjoining defendant from any future marketing, selling, distributing, and advertising in the Chicago area. Further, plaintiff seeks an order requiring defendant to abandon any trade or service mark applications containing the word

36

"bliss." For the reasons articulated below, the court denies plaintiff's motion.

**PRELIMINARY INJUNCTION STANDARDS**

A preliminary injunction is an extraordinary and drastic remedy granted only when a "movant, by a clear showing, carries the burden of persuasion." *Mazurek* v. *Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997). To carry this burden, the movant must first demonstrate "1) a likelihood of success on the merits, 2) irreparable harm if the preliminary injunction is denied, and 3) the inadequacy of any remedy at law." *Cooper* v. *Salazar*, 196 F.3d 809, 813 (7th Cir. 1999); *see also Meridian Mut. Ins. Co.* v. *Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997). With regard to a likelihood of success on the merits, "[t]he threshold for this showing is low," and a movant "need only demonstrate a 'better than negligible chance of succeeding.'" *Cooper*, 196 F.3d at 813 (quoting *Boucher* v. *School Bd. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998)). With regard to an inadequate remedy at law, the Seventh Circuit has explained that the term "inadequate" does "not mean wholly ineffectual," but rather, "seriously deficient as a remedy for the harm suffered." *Roland Mach. Co.* v. *Dresser Indus., Inc.*, 749 F.2d 380, 390 (7th Cir. 1984).

The movant does not automatically prevail if it makes the initial three factor showing. Instead, the court must then balance the harm to the moving party of wrongfully denying the preliminary injunction against the harm to the non-moving party of granting the injunction, in addition to the effect on non-parties of granting or denying the requested injunctive relief. *Cooper*, 196 F.3d at 813; *Meridian*, 128 F.3d at 1114.

## FACTS[1]

Plaintiff began as a hair salon in 1979 and started providing day spa services in 1993. In 1995, plaintiff moved into the Edens Shopping Plaza located in Wilmette, Illinois, and moved to its current location within the same shopping plaza in 1999. Plaintiff has always been located within approximately two miles of its current location, which faces Interstate route 94. Plaintiff began selling hair care products under the BLISS name in 1980 and skin care products under the BLISS name in 1995. These products are only sold out of plaintiff's salon/day spa and, since June, 2000, in one salon located in Palm Beach Garden, Florida that is not owned by plaintiff. Plaintiff's website is www.BlissSalonDaySpa.com. Plaintiff advertises in the suburban yellow pages covering Wilmette and Glenview, but not in the Chicago yellow pages. (Lehv Decl. Ex. 11 at 98.) Its cable television advertising, not currently running, ran only on the local suburban cable system, *id.* at 55-56, and its newspaper advertisements are localized to the suburbs. (Lehv Decl. Ex. 10 at 119.) It also has a sign that can be seen by travelers on Interstate 94.

Defendant's predecessor founded its first day spa in 1996 in New York and began selling skin care products incorporating the term BLISS in 1996 and hair care products incorporating the same term since approximately 1998. Defendants have filed federal trade and service mark applications for various names including the term BLISS.[2] Defendant's BLISS spas are now in

---

[1]The parties have submitted memoranda of law supported by sworn declarations and do not appear to dispute many of the pertinent facts. Thus, the motion is being decided without an evidentiary hearing.

[2]Defendant's response, supported by copies of their service and trade mark registrations and verified by sworn declarations, states:

Bliss World owns U.S. Registration No. 2,116,892, dated November 25, 1997, for

(continued...)

several New York locations. Defendant has sent its BLISSOUT mail order catalogue to persons located in Illinois, including Chicago, and mailed promotional materials for its goods and services into this judicial district. Defendant also sells its products at its spas, in stores (such as Neiman-Marcus and Saks Fifth Avenue), through catalogues, and over the Internet. Defendant's websites are www.blissspa.com, www.blissworld.com, and www.blissout.com.

## DISCUSSION

Plaintiff's motion rests on its claim for trademark infringement. In order to show a likelihood of success on the merits, plaintiff must demonstrate both that it possesses a valid trademark and infringement. *Platinum Home Mortgage Corp.* v. *Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) ("*Platinum Home II*"); *Meridian*, 128 F.3d at 1115 (citing *Int'l Kennel Club of Chicago, Inc.* v. *Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)). Validity of a mark focuses on "whether that mark specifically identifies and distinguishes one company's goods or services from those of its competitors." *Platinum Home II*, 149 F.3d at 726. Infringement "concerns whether defendant's use of a similar or identical mark causes a likelihood of confusion among consumers as to the source of those specific goods or services." *Id.* (citing *Echo Travel, Inc.* v. *Travel Assoc., Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989)).

---

[2](...continued)
BLISS for "health spa services;" Registration No. 2,212,963 dated December 22, 1998, for BLISSOUT for "catalog store services featuring jewelry, clothing, cosmetics, healthcare and spa products;" and Registration No. 2,327,749 dated March 14, 2000, for BLISS SPA for "cosmetics, namely, skin moisturizer, body scrubs, skin soap, shower gel and body firming gels and lotions." . . . Bliss World also owns numerous federal trademark applications. Ms. Kilgore[, defendant's predecessor,] adopted the BLISS mark in good faith in 1996, without any knowledge of plaintiff.

(Def.'s Resp. at 2-3.)

Plaintiff's claimed trademark, BLISS, is not registered with the United States Patent and Trademark Office ("USPTO") and, therefore, plaintiff has the burden of establishing that it is entitled to trademark protection under § 43 of the Lanham Act. *Platinum Home II*, 149 F.3d at 727 (citing *Mil-Mar Shoe Co., Inc.* v. *Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996)).

"The first step in determining whether an unregistered mark or name is entitled to the protection of the trademark laws is to categorize the name according to the nature of the term itself." *Int'l Kennel Club*, 846 F.2d at 1085. This is a factual determination. *Sands, Taylor & Wood Co.* v. *Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir. 1992) (citing, *inter alia, Forum Corp.* v. *Forum, Ltd.*, 903 F.2d 434, 438 (7th Cir. 1990)). "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992). A generic mark is not protected at all. "[S]uggestive, arbitrary, or fanciful [terms] are automatically entitled to trademark protection because they are inherently distinctive," but a descriptive mark, "one that describes the ingredients of an article of trade or a service[,] . . . generally, . . . is not protected as a trademark because a merely descriptive mark is a poor means of distinguishing one source of services from another." *Platinum Home II*, 149 F.3d at 727. If a descriptive mark becomes distinctive of a party's goods in commerce, however, that mark is then entitled to trademark protection under the Lanham Act. "This acquired distinctiveness is generally called 'secondary meaning.'" *Two Pesos*, 505 U.S. at 769, 112 S. Ct. at 2757; *see also Platinum Home II*, 149 F.3d at 727 ("a descriptive mark may receive trademark protection if it acquires secondary meaning 'in the collective consciousness of the relevant community'") (citing

*Mil-Mar Shoe Co.*, 75 F.3d at 1157).

"Classifying a mark according to the five categories can be tricky business." *Platinum Home Mortgage Corp.* v. *Platinum Fin, Group, Inc.*, No 97 C 5293, 1997 WL 567909, at *1 (N.D. Ill. Sept. 5, 1997) ("*Platinum Home I*"). The courts of this circuit have used the test of *Union Carbide Corp.* v. *Ever-Ready, Inc.*, to distinguish descriptive from suggestive marks: "If the mark imparts information directly it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." 531 F.2d 366, 379 (7th Cir. 1976). "A descriptive mark . . . is one that merely describes the ingredients, qualities, or characteristics of an article of trade or a service." *Mil-Mar Shoe*, 75 F.3d at 1157, (citing *Gimix, Inc.* v. *JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir. 1983)). For example, in *Int'l Kennel Club*, the Seventh Circuit noted that made-up terms like "Kodak" are fanciful, arbitrary or suggestive, whereas "bubbly" for champagne is descriptive. 846 F.2d at 1085. In the *Platinum Home* case, the district court found the term "platinum" to be descriptive rather than suggestive after examining

> (1) the general use and definition of "platinum" to indicate . . . quality and excellence; (2) the plaintiff's use of "platinum" as an alleged trade name or mark of its services; and (3) other businesses' use of "platinum" as a component in their trade names, both within the scope of the [plaintiff's] industry and beyond that profession to businesses not related to or connected with [the plaintiff's type of] services.

*Platinum Home II*, 149 F.2d at 727. The court relied in the first instance on the common law doctrine that terms denoting quality or excellence were protectible only upon proof of secondary meaning, *Platinum Home I*, 1997 WL 567909, at *2, and because the term "platinum" refers to quality or excellence, concluded that the term was descriptive. *Id.* at *4. But it also concluded that "platinum" was descriptive "under the ordinary tests distinguishing suggestive and

descriptive terms." *Id.* Citing the "operation of the imagination" test referenced above, the court reasoned that "the mental leap between the term 'platinum' as it appears in the trade name . . . and the attributes of plaintiff's business is nearly instantaneous." *Id.* at *4.[3]

In an effort to establish entitlement to trademark protection, plaintiff first argued that its use of BLISS is arbitrary or fanciful, but after defendant responded that plaintiff's mark is descriptive, plaintiff took the position that its use is suggestive. Bliss is defined in WEBSTER'S II NEW COLLEGE DICTIONARY (1995) as "1. Extreme happiness; joy. 2. Ecstacy of salvation: spiritual joy." Plaintiff appears to use the term in the dictionary sense. Indeed, plaintiff's owner, Robert Eisenberg, stated at his deposition that he "thought that [bliss] would be an appropriate name for the experience that [he] wanted clients to feel in [his] establishment." (Lehv Decl. Ex. 11 at 39.) Defendant submitted evidence showing that four third-parties market and sell hair or skin care products either containing the word Bliss in the product's name or use the term in the company name,[4] and other evidence that various hair salons also use the name Bliss.[5]

---

[3]The court continued, "At best, the thought process engages in two steps before arriving at a conclusion about plaintiffs [sic] business based on its trade name: (1) 'platinum' describes a superior and valuable metal; and (2) 'platinum' within plaintiffs [sic] trade name denotes superiority and value." *Id.*

[4]Defendant attached as an exhibit an advertisement for Bliss Conditioner by Nioxin, an advertisement for Chakra VII Bliss Moisterizer by Aveda, a label from Moisture Bliss Shampoo by Graham Webb International a/k/a Head Games, and an Internet website for Bliss Botanicals, a company that sells "herbal skin, hair, and body care products from around the world." (Lehv Decl. at ¶ 9.)

[5]Defendant attached as an exhibit an Internet search that listed Shear Bliss Hair Salon located in Chicago, Illinois, Hedda Hair and Body Bliss located in Joliet, Illinois, Shear Bliss located in Brookfield, Wisconsin, and Bliss Hair Design located in Loves Park, Illinois. In addition, defendant attached photographs of three of these businesses, a photocopy of a business card for the fourth, and evidence that they have been in business for periods ranging from three to
(continued...)

The evidence that numerous other similar businesses believe that "bliss" is an effective word to associate with the body grooming industry leads the court to conclude that "bliss" describes a characteristic of the service or result of the use of the product. An inference to be drawn from the use of the term by others in the body grooming industry is that little imagination is required to associate "bliss" with this industry. *See Platinum Home I*, 1997 WL 567909, at *4 ("The more imagination that is required to associate a mark with a product the less likely the words used will be needed by competitors to describe their products.") (quoting *Union Carbide*, 531 F.2d at 379). Like the term "platinum" in the *Platinum Home* case, the term "bliss" "does not identify one particular source or designate the specific origin of [plaintiff's] services without proof of secondary meaning." 149 F.3d at 728; *see also Sands,* 978 F.2d at 952.[6]

---

[5](...continued)
twelve years. Further, defendant attached other Internet searches showing that there is a Bliss Salon and Day Spa located in Overland Park, Kansas, a Bliss Salon located in Memphis, Tennessee, a Bliss Day Spa located in Fort Lauderdale, Florida, and a Bliss Day Spa & Shop located in Metairie, Louisiana.

[6]The court does not want to overstate its conclusion. Certainly, the line between descriptive and suggestive is blurred. Case examples of suggestive names, however, are not so readily associated with the product as in this instance. The Seventh Circuit explained in *Sands*:

> Our cases . . . hold that it is not necessary that a descriptive term depict the product itself, but only that the term refer to a characteristic of the product.
>
> * * * *
>
> We have stated that the imagination required to link a suggestive term with the corresponding product refers to the mental process required to connect a name that is incongruous or figurative with the product (e.g., "Roach Motel" with an insect trap or "TIDE" with soap). The linkage of "thirst" and "aid" to form a play on both "first aid" and "lemonade" does not make the phrase "incongruous" or "figurative" in its method of description. No flight of imagination or keen logical insight is required to make the connection between "Thirst Aid" and a product that quenches thirst. This fact distinguishes "Thirst Aid" from other plays on words that courts have found to be suggestive rather than descriptive.

(continued...)

Plaintiff notes that the USPTO has neither rejected any of defendant's trademark applications that include the word "bliss" on the basis that the term is descriptive nor required defendant to establish secondary meaning. Plaintiff also notes that its own applications have not been rejected. "[S]imply filing an application[, however,] is not sufficient to create rights in the mark." *S Indus., Inc.* v. *Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 805 (N.D. Ill. 1998). Although the conduct of the USPTO is entitled to consideration, plaintiff's argument here does not persuade the court in this instance. Plaintiff's citation to *Jean Patou, Inc.* v. *Jacqueline Cochran, Inc.*, 201 F. Supp. 861 (S.D.N.Y. 1962), is likewise unpersuasive. Many years ago in that case, the court did not, as plaintiff argues, hold that the term "JOY" was suggestive when examining its use in the name of perfume, soap, toilet water, and face powder. Instead, the court stated, "Indeed, it could easily be said to be descriptive of the product's end effect upon the user. Hence, plaintiff must show that JOY has become known in the market place as the name for goods coming from or through a particular source." *Id.* at 864. While the court went on to state that between fanciful and descriptive names, there lies a middle ground that "must be taken in a suggestive or figurative sense," and that the term "JOY stands in this middle ground," the court continued that the term's "secondary meaning must thus be more apparent before it will be protected." *Id.* Hence, the court's characterization of "JOY" as suggestive took place in the context of a secondary meaning analysis, an analysis that is unnecessary if the term were actually suggestive, meaning automatically entitled to protection.[7]

---

[6](...continued)
978 F.2d at 952-953 (citations, alterations, and internal quotation marks omitted).

[7]The court disagrees with the speculative analysis set forth in *Elizabeth Taylor Cosmetics*
(continued...)

Because plaintiff's claimed mark is descriptive, it must show that BLISS has acquired a secondary meaning in order to receive trademark protection. Secondary meaning exists "only if most consumers have come to think of the word not as descriptive at all but as the name of the product." *Int'l Kennel Club*, 846 F.2d at 1085.

> To establish secondary meaning, a court may consider several factors to decide whether secondary meaning has been acquired or established: (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys. A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the "word, term, name, symbol, or device" has come to mean that those products or services are the company's trademark.

*Platinum Home II*, 149 F.3d at 729 (citations omitted). *See also Int'l Kennel Club*, 846 F.2d at 1085 (listing factors and stating, "Although a term's 'primary' meaning is merely descriptive, if through use the public has come to identify the term with a plaintiff's product or service, the words have acquired a 'secondary meaning' and would be come a protectible mark. In other words, "secondary meaning" denotes an association in the mind of the consumer between the trade dress or name of a product and a particular producer.") (citations, alterations, and internal

---

[7](...continued)
*Co., Inc.* v. *Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238, 1243-44 (S.D.N.Y. 1987), also cited by plaintiff, which states that "although the [*Jean Patou*] court still required proof of a secondary meaning, it is doubtful that such proof would, in light of the later cases, be required today." One case relied upon by the *Elizabeth Taylor* court, *Abercrombie & Fitch Co.* v. *Hunting World, Inc.*, 537 F.2d 4 (3nd Cir. 1976), attempted to classify trademarks using the term "Safari" for sporting goods and apparel but does not support the proposition for which it is cited. Instead, *Abercrombie & Fitch* failed to determine whether the term was suggestive or descriptive for boots and shoes and held that it was "a valid trademark even if 'merely descriptive' since it has become incontestable under the Lanham Act" because the plaintiff had registered the mark for use on its shoes. 537 F.2d at 11-12. (With regard to hats, however, the court found that the term was generic.) The *Abercrombie & Fitch* case does stand for the proposition that courts have had great difficulty classifying marks, 527 F.2d at 10-11, a proposition readily acknowledged in this opinion.

quotation marks omitted).

Proof of secondary meaning is a difficult mountain to climb in this case, again because of the use over the years of the term by other similar businesses. With regard to advertising, plaintiff demonstrates only minimal advertising efforts other than the sign on its shop that faces the interstate highway.[8]

Concerning issues relating to sales volume, plaintiff, through the sworn declaration of its vice president Penny Halonen, states that it has about 16,000 to 17,000 customers geographically extending to Milwaukee, Wisconsin to the North, Lemont and Darien, Illinois to the West, and to Michigan City, Indiana to the South. About 20%, or about 3,000 customers, live in Chicago. Plaintiff's customer base effectively covers Cook County and its collar counties. (Halonen Decl. at ¶ 8.)[9] In addition, plaintiff claims, again supported only by Ms. Halonen's declaration, that its total revenue since 1987 for salon and spa services "are in excess of approximately $18,000,000," that total revenue for salon and "spa services from 1979 are estimated to be approximately $23,000,000," and that "[b]etween 1987 and 2000, total revenues for skin care and hair care products sold under the mark BLISS exceed $980,000 and the revenues for hair care products and skin care products sold under the BLISS mark from 1980 are estimated to be about

---

[8]And while plaintiff claims that this sign is clearly visible from Interstate 94 and "seen by countless drivers," the court notices that the photograph taken of the sign and submitted in support by plaintiff shows that trees are located in front of the sign indicating that the sign may not be clearly visible from the Interstate.

[9]The parties dispute whether plaintiff's customer base claims are exaggerated. Defendant submits that discovery has only revealed approximately 4,000 names and does not distinguish between regular and one-time customers. In addition, only approximately 450 listed Chicago zip codes. Because plaintiff's evidence, if taken as true, is insufficient to persuade the court that an injunction is needed, the court will not require an evidentiary hearing to resolve this dispute.

$1,285,000." (*Id.*, at ¶¶ 10 & 11.) Although sales figures in this range may indicate widespread association of plaintiff's name with its mark, plaintiff here fails to place these figures in any meaningful context such as its share of the market or its method of distribution to its share of the market, or in any way explain how its sales or customer figures tend to establish secondary meaning.

It is clear that plaintiff is a senior user over defendant. It is equally clear, however, that other spas and salons in the area local to plaintiff's salon and throughout the country, as well as companies that market and sell hair and spa products, use the term "bliss." This indicates that despite plaintiff's senior use, the public is not likely to have come to associate the term with plaintiff. Plaintiff has not demonstrated through consumer surveys or even customer affidavits that the name BLISS is associated with plaintiff. The court also notes that Mr. Eisenberg seems to have conceded his lack of evidence of secondary meaning when he answered affirmatively at his deposition when asked, "So your statement that your name is well-known in Chicago is just a guess on your part, correct?" (Lehv Decl. Ex. 11 at 59.) It appears that, at most, the public may have come to generally associate the term "bliss" with salon and spa services and products.

Although the threshold is low for establishing a likelihood of success on the merits, plaintiff's evidence does not demonstrate that it has a better than negligible chance of establishing that the public has come to identify BLISS with plaintiff's salon.

**CONCLUSION AND ORDER**

Plaintiff has not established the requisite likelihood of success on the merits for preliminary injunctive relief, and the court need not address any further factors relevant to the granting of interlocutory relief. This ruling is limited to the motion for preliminary injunction. It

is conceivable that further development of evidence of secondary meaning could persuade the court otherwise.

For the reasons stated, plaintiff's motion for a preliminary injunction is denied.

Date: December 22, 2000

Enter: [signature]
JOAN HUMPHREY LEFKOW
United States District Judge